**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 98-10473
Summary Calendar

HERITAGE PRINTERS AND PUBLISHERS, INC.; RODNEY L. DOCKERY,

Plaintiffs-Appellants,

VERSUS

JIMMY SWAGGART MINISTRIES; JIMMY SWAGGART,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Texas

(3:97-CV-392-BD)

April 6, 1999

Before WISDOM, JONES, and EMILIO M. GARZA, Circuit Judges.

Per Curiam:[*]

Heritage Printers and Publishers, Inc. and its owner, Rodney Dockery, filed suit against Jimmy Swaggart Ministries and Jimmy Swaggart personally in Texas state district court. The defendants (collectively, "JSM") removed the action to federal district court based on diversity of citizenship. After amended pleadings were filed, JSM moved to dismiss the suit as failing to state a claim upon which relief could be granted.[2] The district judge granted the motion with respect to Heritage's claim of fraud. The remaining claims in the suit were later voluntarily dismissed by Heritage Printers and Dockery (collectively, "Heritage"). Heritage now appeals the portion of the

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[2] Fed. R. Civ. P. 12 (b) (6).

district court's order dismissing the fraud claim under Rule 12 (b) (6).  We affirm.

This dispute has a long and well-documented history.  Heritage printed Bibles, magazines, and other materials for JSM from 1981 until 1989 without incident.  Beginning in 1989, JSM began to "slow pay" invoices from Heritage, while Heritage continued to do printing work for JSM.  As this practice continued, JSM's debts to Heritage eventually reached over one million dollars.

Heritage contends that Jimmy Swaggart personally assured Rodney Dockery that payment would be made as soon as JSM had the financial wherewithal to do so.  Heritage further contends that Dockery relied on these assurances, and therefore did not file suit against JSM until 1992, when Heritage had reached the brink of financial ruin.  In 1992, Heritage filed suit against JSM under the Louisiana Open Account Statute,[3] seeking payment of the debt, with interest and attorney's fees.  After a trial on the merits in 1994, Heritage won a judgment of  $1.78 million dollars, plus interest, but without attorney's fees.  On appeal, the Louisiana First Circuit Court of Appeals reduced the judgment by approximately half a million dollars, and also reduced the interest awarded.  The Louisiana Supreme Court declined to review the case, and the judgment became final.[4]  JSM paid the judgment in full, and the matter appeared to be closed.

In early 1997, nine months after the Louisiana Supreme Court denied writs in the previous case, Heritage filed this action in state district court in Texas.  Heritage now alleges fraud on the part of JSM.  Heritage contends that it has received information from a former JSM  "insider"  indicating that JSM always had the resources needed to pay Heritage, and that Jimmy Swaggart lied to Dockery about the financial status of JSM in the hopes of delaying litigation on the debts.  Heritage contends that this fraud caused damages separate and distinct from those reduced to a judgment in the previous litigation.

We review a district court's dismissal for failure to state a claim *de novo*.[5]

---

[3]  LSA- R.S. 9:2781.

[4]  Heritage Worldwide, Inc. v. Jimmy Swaggart Ministries, 665 So.2d 523 (La. App. 1st Cir. 1995), *writ denied*, 670 So.2d 1233 (La. 1996).

[5]  First Gibraltar Bank, FSB v. Smith, 62 F.3d 133 (5th Cir. 1995).

Heritage contends that JSM's fraudulent misrepresentations induced Heritage not to take legal action against JSM for a period of eighteen months. Heritage argues that as a result of this fraud, they suffered damages separate and distinct from those damages awarded in the previous litigation. It is difficult to see how. Heritage claims reputational damages within the printing industry resulting from cash flow problems cause by JSM's failure to make good on its debt. Yet Heritage has already been paid over one million dollars in damages by JSM to cover exactly those damages caused by the failure to make timely payments. The only possible "damage" Heritage could have suffered by delaying the initiation of litigation is interest that would have been earned had JSM made timely payment on the debt. This definition of damages due to delay is taken directly from the Louisiana Civil Code, which governed the Open Account suit: "When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due at the rate agreed to by the parties."[6]

Heritage further confuses the issue by contending that the district court dismissed the fraud allegation because Heritage had failed to adequately particularize the damages they had suffered, and that doing so was an abuse of discretion. This is simply not true. The opinion of Magistrate Kaplan plainly states that the reason for granting the motion to dismiss is that "the damages occasioned by the mere delay in filing suit were fully accounted for in the award of prejudgment interest."[7] Even had Heritage been permitted to amend the complaint again, there is still not a claim upon which relief could be granted.

The order of the district court dismissing the claim of fraud under Rule 12 (b) (6) is AFFIRMED.

---

[6] La.C.C. Art. 2000.

[7] R. vol. 6, p. 28.